NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

SEP 20 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

KEJIN CHEN,

Petitioner,

v.

MERRICK B. GARLAND, Attorney
General,

Respondent.

No.    16-71100

Agency No. A087-886-096

MEMORANDUM*

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted August 11, 2020
Submission Vacated November 24, 2020
Resubmitted September 16, 2021
Pasadena, California

Before:  WARDLAW and VANDYKE, Circuit Judges, and HILLMAN,** District
Judge.

Kejin Chen, a native and citizen of the People's Republic of China, petitions

for review of the Board of Immigration Appeals' (BIA) order dismissing his

---

\*      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\*      The Honorable Timothy Hillman, United States District Judge for the
District of Massachusetts, sitting by designation.

applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).

We have jurisdiction to review Chen's petition under 8 U.S.C. § 1252. We review only the reasons the BIA gave in support of its decision, and we review those reasons for "substantial evidence." A*rrey v. Barr*, 916 F.3d 1149, 1157 (9th Cir. 2019) (quoting *Navas v. I.N.S.*, 217 F.3d 646, 658 n.16 (9th Cir. 2000); *Mairena v. Barr*, 917 F.3d 1119, 1123 (9th Cir. 2019). Under that standard, we must find the BIA's reasons sufficient unless, after reviewing the record as a whole, "any reasonable adjudicator" would have been "compelled" to reach a different conclusion. 8 U.S.C. § 1252(b)(4)(B); *Garland v. Dai*, 141 S. Ct. 1669, 1677 (2021).

1. Substantial evidence supports the BIA's determination that Chen did not meet his burden of proof to qualify for asylum or withholding of removal because "some of his corroborative evidence conflicts with his testimony and other corroborative evidence." Reviewing the record as a whole, we find a number of conflicts between Chen's testimony and corroborating documents that go to the heart of his claim, which the BIA did not explicitly identify.[1]

---

[1] The BIA pointed to a "conflict" between Chen's testimony that he was released because his mother paid the police 5000 RMB, and the statement in his Certificate of Release that he was released because of insufficient evidence. However, those two statements do not necessarily conflict. If Chen's mother paid a 5000 RMB

For example, in his asylum statement, and in the testimony he later gave before an immigration judge (IJ), Chen claimed that he converted to Christianity around October 2006. He explained that he graduated from University in July 2006, moved home, and began to look for work. He felt huge pressure to find work, at least in part because his parents worked at a supermarket, and made only enough money to cover their daily expenses. After months of searching for a job without any success, he became depressed, and on October 1, 2006, he began attending a Christian church in his hometown to help deal with his depression..

However, a number of other documents Chen submitted contradict that account. For one, Chen submitted a copy of his Chinese diploma, which states that he did not graduate University in 2006, but that he graduated in January 2007. The town where Chen attended University was nearly 400 miles away from his hometown. So, if the date on his diploma is accurate, Chen could not have been at home looking for work and attending church during the time period he testified that he was. The IJ gave Chen the opportunity to explain the inconsistency, but he failed to do so.

Chen also submitted a copy of his visa application, which stated that his father worked at the Shenyang Public Security Bureau, not at a grocery store, and a

---

bribe to get him out of prison, it's unlikely the police would admit to that on an official document.

copy of his I-20 forms, which show that while Chen was in the US, his father was able to pay nearly $50,000 in tuition over four years. Those documents undermine Chen's claim that he was stressed because his parents were struggling to make ends meet.

Finally, Chen submitted a letter from a member of his church in Los Angeles, which stated that as of 2011, Chen had not yet converted to Christianity: "[Chen] has yet to become a Christian, a believer of Jesus Christ, because he is not yet convinced or convicted [sic] that Christ is the only way to salvation as God has planned. However, he is still searching for his spiritual truth." That letter not only contradicts Chen's testimony that he converted in 2006, it casts doubt on whether he converted at any point between 2006 and 2011.

2. Substantial evidence also supports the BIA's determination that Chen did not meet his burden of proof to qualify for protection under CAT. To qualify for CAT relief, an applicant must establish that is it "more likely than not" that he would be tortured if removed to his country of origin. 8 C.F.R. § 208.16(c)(2); *see also Tamang v. Holder*, 598 F.3d 1083, 1095 (9th Cir. 2010).

The IJ found that Chen failed to meet his burden of proof because, after reviewing Chen's testimony and the supporting documentation he provided, he found no evidence that Chen had been tortured in the past or that the Chinese authorities had any reason to torture him in the future. Chen's record certainly

4

does not compel the conclusion that he would be tortured if returned. None of Chen's other arguments have merit.

**PETITION FOR REVIEW DENIED**.